AARON M. CLEFTON, Esq.  (SBN 318680)
CLEFTON DISABILITY LAW
2601 Blanding Ave, Suite C, #336
Telephone:  510/832-5001
info@cleftonlaw.com

Attorneys for Plaintiff
JEREMY MILLER

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY MILLER<br><br>    Plaintiff,<br><br><br>v.<br><br><br><br>HOTEL AVENIDA – OCEANSIDE CAMP PENDLETON; SOMNATH,<br><br><br>    Defendant. | CASE NO. **'25CV1852 JLS  SBC**<br>Civil Rights<br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:**<br><br>1. **Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**<br><br>2. **Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)**<br><br>3. **Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff JEREMY MILLER complains of Defendants HOTEL AVENIDA – OCEANSIDE CAMP PENDLETON; SOMNATH, and allege as follows:

1.    **INTRODUCTION:**  Defendants would not allow disabled Plaintiff to stay at their motel due to the presence of his service dog. Plaintiff made a reservation to stay at Hotel Avenida located at 1403 Mission Ave, Oceanside, CA 92058, for the night of March 20, 2025. When he arrived to check-in at the hotel, Plaintiff informed Defendants' employee at the check-in desk that he had a service animal. Defendants' employee then told Plaintiff that he was canceling his reservation and accused him of lying about his service dog actually being a service

1

dog. Additionally, Defendant's employees asked Plaintiff harassing questions about his service dog, even after he had answered the two questions Defendants are legally allowed to ask (Is this a service dog? What tasks is he trained to do for your disability?). Defendants' employees asked Plaintiff intrusive questions about his disability, questioning its validity, and whether he actually needed his dog to assist him.

2.    The Defendants' decision to exclude and harass patrons who use service dogs contravenes the Department of Justice's technical assistance and guidance on the subject of "Service Animals."  In relevant part, the guidance states:

When it is not obvious what service an animal provides, only limited inquiries are allowed. Staff may ask two questions: (1) is the dog a service animal required because of a disability, and (2) what work or task has the dog been trained to perform. Staff cannot ask about the person's disability, require medical documentation, require a special identification card or training documentation for the dog, or ask that the dog demonstrate its ability to perform the work or task.

…

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence**.**

- Establishments that sell or prepare food must generally allow service animals in public areas even if state or local health codes prohibit animals on the premises.

- People with disabilities who use service animals cannot be isolated

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

from other patrons, treated less favorably than other patrons, or charged fees that are not charged to other patrons without animals.

3.    DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/.

4.    Plaintiff often has the need or desire to stay in motels in the San Diego area. Plaintiff lives in the San Diego area. On many nights he sleeps in his car. However, when he has sufficient funds (usually two to three times a week), Plaintiff reserves rooms at inexpensive motels in the area so that he can have some privacy, sleep in a bed, and take a shower. Hotel Avenida is particularly convenient for Plaintiff due to the room rate, location, and amenities. Plaintiff intends to return to Hotel Avenida in the future but cannot do so until the policies of the hotel are made accessible to disabled individuals who use service dogs, including revision of their service dog policies and necessary employee training and/or re-training. Plaintiff has brought this lawsuit to force Defendants to change their discriminatory and illegal policies and compensate him for refusing to allow Plaintiff to stay at the hotel because Plaintiff is a disabled person who needs the assistance of his qualified service dog. Plaintiff seeks an injunction to protect the rights of all disabled persons, including Plaintiff, when accompanied by a qualified service dog at the Hotel Avenida.

5.    **JURISDICTION:** This Court has jurisdiction of this action pursuant to 28 USC sections 1331 and 1343. This Court has jurisdiction over the claims brought under California law pursuant to 28 U.S.C. § 1367.

6.    **VENUE:** Venue is proper in this court pursuant to 28 USC section 1391(b) and is proper because the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

7.    **PARTIES:** Plaintiff Jeremy Miller is a "qualified" disabled person who uses the assistance of a service dog to ameliorate his disability.

Plaintiff suffers from Generalized Anxiety Disorder, Attention-Deficit/Hyperactivity Disorder (predominantly inattentive presentation), Post-Traumatic Stress Disorder and Mild Recurrent Depression.  Many of Plaintiff's disabilities stem from childhood trauma which included both abuse and neglect.  He suffers from crying spells, ruminating thoughts, distractibility, difficulty maintaining focus, and low energy levels.  Plaintiff's disability significantly impacts his ability to concentrate, work, and maintain relationships.

8.      Plaintiff relies upon his service dog, a papillon, dachshund, chihuahua mix named "Lucy", to assist him with certain tasks to ameliorate his disability. These include interrupting destructive behaviors such as crying spells, excessive daydreaming/inattention and when Plaintiff is experiencing ruminating thoughts. Lucy is trained to paw Plaintiff's leg until he ceases crying or ruminating and focuses his attention on her.  This brings Plaintiff's attention to the present and allows him to focus on what is happening in the moment rather than ruminating on past events.  Additionally, Lucy is trained to provide deep pressure therapy for Plaintiff on command.  When Plaintiff needs deep pressure therapy, he lies down and motions Lucy to lie down on him by patting an area of his body.  Lucy will then lie on the area patted until Plaintiff releases her.  This allows Plaintiff to focus on breathing, calming himself, and remaining in the present.  All of these tasks Plaintiff has trained Lucy to do with commands. They are not behaviors that Lucy has engaged in naturally or without his training.  Lucy was individually trained to be a service dog by Plaintiff, and they have been working together for almost two years.  Additionally, Plaintiff continues to reinforce the training with Lucy daily. Plaintiff is a qualified person with a disability as defined under federal and state law who is substantially limited in the major life activities of interacting with other people, concentrating and working.  42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1).

9.      Defendants HOTEL AVENIDA – OCEANSIDE CAMP

PENDLETON; SOMNATH, are and were at all times relevant to this Complaint the owners, operators, lessors and/or lessees of the subject business located at 1403 Mission Ave, Oceanside, CA 92058, California, known as the Hotel Avenida.

10.     Hotel Avenida is a place of "public accommodation" and a "business establishment" subject to the requirements *inter alia* of the categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq.*

11.     **FACTUAL STATEMENT:**  Plaintiff Jeremy Miller has been working with his service dog Lucy for almost two years.  Lucy is a papillon, dachshund, chihuahua mix who has been individually trained to be a service dog. Plaintiff has trained and continues to train Lucy to serve his specific needs throughout their relationship through a series of commands and gestures.  Lucy is specifically trained to assist Plaintiff by interrupting destructive behaviors and providing deep pressure therapy.

12.     Plaintiff chose and adopted Lucy specifically in order to train her to be a service dog. He began training Lucy within one week of adopting her.  Plaintiff used online resources including those provided by Psychiatric Service Dog Partners (psychdogpartners.org) and many You-Tube videos such as those produced by Youtube channel DoggyU regarding training of psychiatric service dogs in order to assist him in training Lucy to perform her tasks.  Plaintiff used praise as well as voice and treat reward training techniques to train Lucy.  For example, Plaintiff trained her to interrupt crying spells by luring her to him with special treats when he was having a crying spell (or pretending to have a crying spell).  When she pawed his leg, Plaintiff would give Lucy the special treat.  Now Lucy performs the task when Plaintiff is having a crying spell without the need for the special treat.

13.     Lucy is a working dog; she is not a pet.  Plaintiff and Lucy have trained extensively together, and they supplement that training daily.  Plaintiff takes Lucy almost everywhere with him in public.  It is important they stay together as

much as possible because (a) Lucy provides important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond.  With few exceptions, where Plaintiff goes, Lucy goes.

14.    On March 20, 2025, Plaintiff made a reservation through a third-party travel website to stay at Hotel Avenida for the night.

15.    Plaintiff drove his vehicle to the hotel in the late afternoon on March 20, 2025, to check-in to Hotel Avenida.  When he arrived in the parking lot, Plaintiff's service dog Lucy was asleep in his car, so he decided to leave her in the car while he checked into the Hotel rather than wake her up.

16.    Plaintiff entered the lobby of Hotel Avenida and approached the reception desk.  One of Defendants' employees greeted Plaintiff.  Plaintiff introduced himself to Defendants' employee and told him that he had reserved a room for the evening. Then, Plaintiff handed Defendants' employee his credit card.

17.    As Defendants' employee was completing Plaintiff's check-in process, Plaintiff said "I know you accept pets here, but I just wanted to let you know that I have a service dog." Defendants' employee suddenly became angry and told Plaintiff that he was cancelling his reservation at Hotel Avenida.  When Plaintiff asked why, Defendants' employee told him that it was because Plaintiff had not informed Defendants that he would be accompanied by a service dog prior to coming to the hotel and that he was clearly trying to avoid the "pet fee."

18.    When Plaintiff rebutted Defendants' refusal to allow him to stay at Hotel Avenida, Defendants' employee then told Plaintiff that if he brought his dog on the property he would have to pay a pet fee.  Plaintiff then reiterated that his dog is a service dog, so he does not need to pay a fee.  Then Defendants' employee told Plaintiff that if his dog was a "real service dog" the dog would accompany Plaintiff everywhere he goes "24/7."  Plaintiff explained that his service dog was resting in his vehicle and that all dogs, even service dogs, need to rest and sleep sometimes. Defendants' employee continued to berate Plaintiff and accuse him of lying about

his dog's status as a service animal.

19.    At this point Plaintiff went back to his vehicle, roused his service dog Lucy, and brought her inside the lobby of Hotel Avenida so that Defendants' employee could see that he did in fact have a service dog.

20.    When Plaintiff returned to the lobby, Defendants' employee asked Plaintiff where Lucy's "badge" was.  Plaintiff explained that by law, Lucy did not need to where a "badge."  Defendants' employee continued to argue with Plaintiff, stating that "he knew the law" and service dogs had to wear a "badge" and be with their handler "24/7."

21.    Plaintiff continued to push back, stating that he knew the law and service dogs were not required to wear anything identifying them as service dogs nor were they required by law to be with their handlers at all times.

22.    Defendants' employee handed Plaintiff a form to fill out entitled "Econo Lodge Oceanside Service Animal Questionnaire."  The form stated "In case of an emergency, please briefly describe below how your service animal assists you with your disabilities. This is required so that we can inform the appropriate authorities (i.e. paramedics, fire, and police)." In response to this request, Plaintiff wrote "medical alert." Defendants' employee then berated Plaintiff for writing this as the work performed by his service dog.  He again accused Plaintiff of lying about the status of his service dog, stating that if he needed her for medical alert then he would never leave her in his vehicle. Plaintiff again stated that he did not need his service dog at every moment of the day and that he was capable of letting her rest in his vehicle for a couple of minutes while he checked into the hotel.

23.    Defendants' employee still would not allow Plaintiff to complete the check-in process.  He asked Plaintiff what medical alert Plaintiff needed.  Plaintiff informed Defendants' employee that he wrote "medical alert" because that is the task/work that Lucy performs for him but that he is not required provide a detailed description of that task which would force him to disclose his private medical

1   diagnoses to Defendants.  Defendants' employee then told Plaintiff that if he did

2   not have to disclose that information then Defendants did not have to allow him to

3   stay in the room.

4       24.    At this point, Plaintiff left the lobby of Hotel Avenida to call Agoda,

5   the third-party travel website through which he had booked his reservation for the

6   hotel.  After being on the phone with Agoda customer service for about an hour,

7   who on information and belief was also communicating with Defendants' employee

8   at Hotel Avenida, Plaintiff returned to the lobby to speak with Defendants'

9   employee.  Plaintiff asked again to complete the check-in process and get his key or

10  get a refund for the room and deposit which he had already paid.

11      25.    Defendant's employee refused, and began rebuking Plaintiff for

12  wearing a KN95 mask and for the clothing he was wearing. Ultimately, Plaintiff left

13  Hotel Avenida without receiving a key for a room or a refund for the room.

14  Plaintiff had to contest the room charge with his credit card company in order to get

15  a refund, and he had to find alternative accommodation for the evening.

16      26.    Plaintiff wishes to return to the Hotel Avenida when he has the need or

17  want for motel accommodation in the San Diego area, but only *after* Defendants

18  have implemented proper service animal policies and training of their staff.

19  Plaintiff is deterred from returning to the hotel until these policies and training are

20  in place.

### FIRST CAUSE OF ACTION:
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990
### (42 USC §§ 12101 *et seq.*)

23      27.     Plaintiff repleads and incorporates by reference, as if fully set forth

24  again herein, the factual allegations contained in Paragraphs 1 through 26 above,

25  and incorporates them herein by reference as if separately repled hereafter.

26      28.    In 1990 Congress passed the Americans with Disabilities Act after

27  finding that laws were needed to more fully protect "some 43 million Americans

28  with one or more physical or mental disabilities; that historically society has tended

to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."  42 U.S.C. § 12101(a).

29.    The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 USC § 12182.

30.    Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

31.    Hotel Avenida is a public accommodation within the meaning of Title III of the ADA.  42 U.S.C. § 12181(7)(A).

32.    The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii).

33.    Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go."  ADA 2010 Revised

Requirements, www.ada.gov/service -animals-2010.htm  Further,

> **Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

*Ibid.*, emphasis in original.

34.     Defendants have a policy and practice of charging guests with service animals an extra nightly fee at the Hotel Avenida. This is contrary to the ADA.  The Department of Justice issued guidance on the subject of "Service Animals."  In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence**.**

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/.

35.     On information and belief, as of the date of Plaintiff's most recent visit to Hotel Avenida on or about March 20, 2025, Defendants continue to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of Plaintiff's disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendants' premises, in violation of the ADA.

36.     In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

> It is the purpose of this Act
>
> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

37.    As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*).  The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes any "hotel, motel or other place of lodging."  42 USC § 12181(7)(A).

38.    The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

11

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

The acts and omissions of Defendants set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

39.    The removal of each of the policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA. As noted hereinabove, removal of each and every one of the policy barriers complained of herein were already required under California law. In the event that removal of any barrier is found to be "not readily achievable," Defendants still violated the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

40.    On information and belief, as of the dates of Plaintiff's encounter at the premises and as of the filing of this Complaint, Defendants' actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other disabled persons who work with service dogs, which violates Plaintiff's right to full and equal access and which discriminates against Plaintiff on

the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

41.    Defendants' actions continue to deny Plaintiff's rights to full and equal access by deterring Plaintiff from patronizing the Hotel Avenida and discriminated and continue to discriminate against Plaintiff on the basis of his status as a disabled person who uses a service dog, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

42.    Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of his disabilities in violation of sections 12182 and 12183.  On information and belief, Defendants have continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters.  Pursuant to section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title.  Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

43.    Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990. Plaintiff is a qualified disabled person for purposes of § 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing he will be subjected to such

discrimination each time that he may use the property and premises, or attempt to patronize the Hotel Avenida, in light of Defendants' policies barriers.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

**SECOND CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED BY CIVIL CODE SECTION 51(f)**

44.    Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 43 of this Complaint and incorporates them herein as if separately re-pleaded.

45.    At all times relevant to this action, the Unruh Civil Rights Act, California Civil Code § 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

46.    California Civil Code section 52 provides that the discrimination by Defendants against Plaintiff on the basis of disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

47.    Each of Defendants' discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

48.    Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law,

including Civil Code section 52.  Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

49.     The actions and omissions of Defendants as herein alleged constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs within the meaning of California Civil Code sections 51 and 52.  As a proximate result of Defendants' action and omissions, Defendants have discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and are responsible for statutory and compensatory to Plaintiff, according to proof.

50.     **FEES AND COSTS:**  As a result of Defendants' acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute in order to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the provisions of California Civil Code sections 51 and 52.  Additionally, Plaintiff's lawsuit is intended to require that Defendants make their facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

51.     Plaintiff suffered damages as above-described as a result of Defendants' violations.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

**THIRD CAUSE OF ACTION:**
**DAMAGES AND INJUNCTIVE RELIEF**
**FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC**
**FACILITIES  IN A PUBLIC ACCOMMODATION**
**(Civil Code §§ 54 *et seq.*)**

52.     Plaintiff repleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 51 of this

Complaint and all paragraphs of the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

53.    Under the California Disabled Persons Act (CDPA), people with disabilities are entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public places."  Civil Code § 54(a).

54.    Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with disabilities to "accommodations, advantages, facilities . . . hotels, lodging places of accommodation, amusement or resort, or other places to which the general public is invited."  Civil Code § 54.1(c) also specifies that, "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

55.    Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

56.    Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2."  This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out their functions in assisting a disabled person."

57.    Defendants are also in violation of California Penal Code section 365.5(b) which states:

> No blind person, deaf person, or disabled person and his or her specially trained guide dog, signal dog, or service dog shall be denied admittance to accommodations, advantages, facilities, medical facilities, including

hospitals, clinics, and physicians' offices, telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited within this state because of that guide dog, signal dog, or service dog.

58.     Hotel Avenida is a public accommodation within the meaning of the CDPA.  On information and belief, Defendants are the owner, operator, lessor or lessee of the public accommodation.

59.     Defendants made the decision to knowingly and willfully exclude Plaintiff and his service dog from their public accommodation and thereby deny Plaintiff's right of entrance into their place of business with his service dog.  As a result of that decision Plaintiff has faced the continuing discrimination of being essentially barred from entering this public accommodation and place of business based upon Defendants' illegal fees for Plaintiff's legally protected use of his service dog.  Plaintiff has continued to suffer denial of access to these facilities and faces the prospect of unpleasant and discriminatory treatment should they attempt to return to these facilities.  Plaintiff is unable to return to the Hotel Avenida until he receives the protection of this Court's injunctive relief, and he has continued to suffer discrimination on a daily basis since March 20, 2025, all to his statutory damages pursuant to California Civil Code §§ 54.1, 54.2, and 54.3 and California Penal Code section 365.5.

60.     **INJUNCTIVE RELIEF:**  Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendants as complained of herein which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are disabled, who require the assistance of service animals from full and equal access to these public facilities.  Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against them on the sole basis that Plaintiff is a person with disabilities who requires the assistance of a service animal.

61.     Plaintiff wishes to return to patronize the Hotel Avenida but is deterred from returning to use these facilities, because the lack of access and the significant policy barriers will foreseeably cause him further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendants continue, to achieve equal access to and use of these public facilities. Therefore, Plaintiff cannot return to patronize the Hotel Avenida and its facilities and is deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiff and other disabled individuals who require the assistance of a service animal.

62.     The acts of Defendants have proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court.  Plaintiff seeks injunctive relief as to Defendants' inaccessible policies.   As to the Defendants that currently owns, operates, and/or leases (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

63.     Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendants to grant full and equal access to Plaintiff in the ways complained of and to require Defendants to comply forthwith with the applicable statutory requirements relating to access for disabled persons. Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws.  Plaintiff further request that the Court award damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs pursuant to Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as hereinafter prayed for.

64.     **DAMAGES:** As a result of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendants in owning, operating, leasing, constructing, altering, and/or maintaining the subject facilities,

Plaintiff has suffered a violation of his civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to his damages per Civil Code section 54.3, including general and statutory damages, as hereinafter stated.  Defendants' actions and omissions to act constitute discrimination against Plaintiff on the basis that he was and is disabled and unable, because of the policy barriers created and/or maintained by the Defendants in violation of the subject laws, to use the public facilities on a full and equal basis as other persons.  The violations have deterred Plaintiff from returning to attempt to patronize the Hotel Avenida and will continue to cause them damages each day these barriers to access and policy barriers continue to be present.

65.    Although it is not necessary for Plaintiff to prove wrongful intent in order to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990)), Defendants' behavior was intentional. Defendants were aware and/or were made aware of their duties to refrain from establishing discriminatory policies against disabled persons, prior to the filing of this complaint.  Defendants' establishment of their discriminatory policy to deny and restrict entry to persons with service dogs, and their implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for Plaintiff's rights and safety.

66.    **FEES AND COSTS:**  As a result of Defendants' acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, pursuant to the provisions of Civil Code sections 54.3 and 55.  Additionally, Plaintiff's lawsuit is intended to

require that Defendants make their facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

67.     Plaintiff suffered damages as above described as a result of Defendants' violations.  Damages are ongoing based on his deterrence from returning to the Hotel Avenida.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

## PRAYER

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint.  Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiff is granted the relief they request.  Plaintiff and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff Jeremy Miller prays for judgment and the following specific relief against Defendants:

1.     An order enjoining Defendants, their agents, officials, employees, and all persons acting in concert with them:

    a.  From continuing the unlawful acts, conditions, and practices described in this Complaint;

    b.  To modify their policies and practices to accommodate service dog users in conformity with federal and state law, and to advise Plaintiff that his service dog will not be excluded should he desire to enter and use the services of the Hotel Avenida;

    c.  Advise Plaintiff that he is welcome to come back to enter and use the

services of the Hotel Avenida;

    d.  That the Court issue preliminary and permanent injunction directing Defendants as current owners, operators, lessors, and/or lessees and/or their agents of the subject property and premises to modify the above described property, premises, policies and related policies and practices to provide full and equal access to all persons, including persons with disabilities; and issue a preliminary and permanent injunction pursuant to ADA section 12188(a) and state law directing Defendants to provide facilities usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided and to train Defendants' employees and agents in how to recognize disabled persons and accommodate their rights and needs;

    e.  An order retaining jurisdiction of this case until Defendants have fully complied with the orders of this Court, and there is a reasonable assurance that Defendants will continue to comply in the future absent continuing jurisdiction;

2.    An award to Plaintiff of statutory, actual, general, and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

3.    An award of civil penalty as against Defendants under California Penal Code § 365.5(c);

4.    An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

5.    An award of prejudgment interest pursuant to Civil Code § 3291;

6.    Interest on monetary awards as permitted by law; and

21

7.    Grant such other and further relief as this Court may deem just and proper.

Date: July 21, 2025                          CLEFTON DISABILITY LAW

                                             ___/s/ Aaron M. Clefton___
                                             By AARON M. CLEFTON, Esq.
                                             Attorneys for Plaintiff
                                             JEREMY MILLER

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

Date: July 21, 2025                          CLEFTON DISABILITY LAW

                                             ___/s/ Aaron M. Clefton___
                                             By AARON M. CLEFTON, Esq.
                                             Attorneys for Plaintiff
                                             JEREMY MILLER